# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED HEALTHCARE SERVICES, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 17-555 |
| | : | |
| CEPHALON, INC., | : | |
| | : | |
| Defendants. | : | |

Goldberg, J.                                                                                                                 February 13, 2018

## MEMORANDUM OPINION

The above-captioned case brought by Plaintiff United Healthcare Services ("UHS") is one of several Actavis reverse payment settlement antitrust actions before me. Defendant Sun Pharmaceutical Industries, Inc. ("Sun") moves to dismiss this case for lack of personal jurisdiction. For the following reasons, Defendant's Motion will be denied.

## I.     FACTUAL BACKGROUND

The Amended Complaint sets forth antitrust claims arising out of allegations that Defendants Cephalon, Inc. ("Cephalon") and Ranbaxy Laboratories, Ltd. ("Ranbaxy"), among other generic pharmaceutical manufacturers, entered into reverse payment agreements to delay entry of generic versions of the drug Provigil. This particular case involves the same subject matter as numerous cases consolidated in the In re Modafinil Litigation, where Ranbaxy is a named defendant.

Ranbaxy previously existed as a Delaware corporation with its principal place of business in New Jersey. In April of 2014, Ranbaxy merged with Sun—an Indian corporation with its

principal place of business in India—and pursuant to that merger, all shares of Ranbaxy were acquired by Sun. As a result, UHS's Amended Complaint, which was originally filed in the District of Minnesota, named Sun as a Defendant and sought to hold it liable for the actions of its predecessor, Ranbaxy. (Am. Compl. ¶ 19.)

Subsequently, Cephalon and its corporate affiliates moved to transfer this case to this Court. That motion was granted on February 6, 2017, and the case was assigned to my docket.

## II. STANDARD OF REVIEW

Motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) require the court to accept as true the allegations of the pleadings and all reasonable inferences therefrom, and to resolve all factual disputes in favor of the plaintiff. Fed. R. Civ. P. 12(b)(2); see also Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). The rule, however, "does not limit the scope of the court's review to the face of the pleadings." Scott v. Lackey, No. 02–1586, 2005 WL 2035598, at *1–2 (M.D. Pa. Aug. 11, 2005). Rather the court must consider any affidavits submitted by the parties. Id.

Although a defendant has the initial burden of raising the defense of lack of personal jurisdiction, once such a defense is raised, the burden shifts to the plaintiff to demonstrate facts that suffice to support an exercise of personal jurisdiction. Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987); Cumberland Truck Equip. Co. v. Detroit Diesel Corp., 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005). Plaintiff may do so through affidavits or competent evidence that show sufficient contacts with the forum state to establish personal jurisdiction. De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, No. 08–0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008). Such contacts must be established with "reasonable particularity," but need only amount to a prima facie case in favor of personal jurisdiction.

Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident, 819 F.2d at 437). If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render jurisdiction unreasonable. De Lage Landen Fin. Servs., 2008 WL 4822033, at *3 (citing Carteret Sav. Bank v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992)).

## III. DISCUSSION

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits. Fed. R. Civ. P. 4(k)(1)(A); see also Martin v. Citizens Fin. Group, Inc., No. 10–260, 2010 WL 3239187, at *3 (E.D. Pa. Aug. 13, 2010). Here, the forum state is Pennsylvania, thus necessitating the application of Pennsylvania's long-arm statute. Pursuant to this statute, personal jurisdiction of Pennsylvania courts over nonresident defendants is permitted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b); see Mellon Bank, 960 F.2d at 1221 ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment."). Therefore, a court need only inquire whether the exercise of personal jurisdiction over the defendant would be constitutional under the Due Process Clause. Mellon Bank, 960 F.2d at 1221. Pursuant to these constitutional considerations, physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). Instead, personal jurisdiction may be based on

either a defendant's general contacts ("general jurisdiction") or his specific contacts ("specific jurisdiction") with the forum. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).

UHS concedes that the Court does not have general jurisdiction over Sun. Accordingly, I focus solely on whether the exercise of specific jurisdiction over Sun would be constitutional.

Specific jurisdiction exists where the cause of action is related to or arises out of the defendant's contacts with the forum. IMO Indus., 155 F.3d at 259 (citing Helicopteros de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)). For the exercise of specific jurisdiction to comply with the Due Process Clause, a plaintiff must satisfy a three-part test. Louis A. Grant, Inc. v. Hurricane Equip., Inc., No. 07–438, 2008 WL 892152, at *3 (W.D. Pa. Apr. 2, 2008). First, the plaintiff needs to show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum." IMO Indus., 155 F.3d at 259 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). Second, the plaintiff's claim must "arise out of or relate to those activities." Helicopteros, 466 U.S. at 414. Third, the reviewing court should consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (enumerating the three elements of specific jurisdiction).

In response to Sun's Motion to Dismiss, UHS argues, and Sun does not dispute, that Sun is the successor-in-interest to Ranbaxy pursuant to a merger agreement, dated April 6, 2014, wherein Sun specifically assumed all liabilities of Ranbaxy and agreed that "all claims against Ranbaxy . . . arising prior to the merger shall be prosecuted and enforced against Sun . . . ." (Am. Compl. ¶ 19.) "[U]nder Pennsylvania law, the acts of a predecessor corporation may be attributed to its successor for purposes of determining whether jurisdiction over the successor is

4

proper." Penco Prods., Inc. v. WEC Mf'g, LLC, 974 F. Supp. 2d 740, 749 (E.D. Pa. 2013) (quoting Huth v. Hillsboro Ins. Mgmt., Inc., 72 F. Supp. 2d 506, 510 (E.D. Pa. 1999)); see also In re Nazi Era Cases Against German Defendants Litig., 153 F. App'x 819, 825 (3d Cir. 2005) ("[S]everal courts have recognized that the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process) (quotations omitted). Accordingly, the Court will have specific jurisdiction over Sun if Ranbaxy has sufficient minimum contacts with Pennsylvania.

Based on that premise, UHS offers two theories of personal jurisdiction. First, UHS contends that Ranbaxy has minimum contacts with Pennsylvania through its negotiation, execution, and carrying out of the settlement agreement at issue between Ranbaxy and Pennsylvania-based Cephalon. Second, UHS asserts that personal jurisdiction is proper because the Amended Complaint alleges the existence of a conspiracy, of which Ranbaxy was a part, and because substantial conduct, in furtherance of the conspiracy, occurred in Pennsylvania.[1]

### A. **Whether Ranbaxy Had Sufficient Minimum Contacts with Pennsylvania**

UHS's first theory asserts that Ranbaxy had minimum contacts with Pennsylvania based on its reverse settlement agreement with Cephalon, a Pennsylvania corporation. However, "an individual's contract with an out-of-state party *alone*" does not "automatically establish sufficient minimum contacts in the other party's home forum," Burger King, 471 U.S. 478. Rather, due process requires that the suit in which personal jurisdiction is sought be "based on a contract which had substantial connection with [the forum] State." McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, (1957). UHS points to no allegations in the Amended Complaint—and I can

---

[1] UHS also posits that Sun failed to dispute personal jurisdiction when Cephalon moved to transfer this case from the District of Minnesota to the Eastern District of Pennsylvania and such failure could be construed as a waiver of its right to bring a personal jurisdiction defense. As I find personal jurisdiction on other grounds, I need not address this issue.

find none—establishing that Ranbaxy itself directed any activities into Pennsylvania in order to consummate this settlement agreement.[2] (See Am. Compl. ¶ 94 (referencing the agreement between Cephalon and Ranbaxy without indication of the situs of negotiations or execution of the contract). Absent affidavits or other evidence reflecting Ranbaxy's activities directed toward the forum state, I cannot find that Ranbaxy purposefully availed itself of Pennsylvania simply by entering into a contract with a Pennsylvania-based company.

Alternatively, UHS argues that according to the Amended Complaint, Ranbaxy received payments relating to the bilateral settlements from Cephalon. (Am. Compl. ¶¶ 95–97.) Because "Cephalon is a Pennsylvania-based company," and thus must have sent the payments from Pennsylvania, UHS posits that these anticompetitive payments are "inextricably linked with Pennsylvania." (UHS's Opp'n Mot. to Dismiss 6.)

Nothing in the Amended Complaint creates an inference that these payments were sent from Cephalon's offices in Pennsylvania. Indeed, the Amended Complaint suggests that Cephalon maintains other offices and facilities in other states—meaning that the payment could have come from a different office. (Am. Compl. ¶ 16.) Moreover, UHS cites to no case law establishing that mere receipt of payments sent from a forum state pursuant to a contract constitutes sufficient minimum contacts with that forum state for purposes of personal jurisdiction.

---

[2] UHS argues that "[v]arious defendants, including Cephalon, have admitted that the 'challenged conduct' and 'the "operative events" underlying the Amended Complaint' took place in Pennsylvania, including the 'negotiation of the bilateral Settlements at issue.'" (UHS Opp'n Mot. to Dismiss pp. 5–6.) UHS cites, however, to the Motion by Cephalon, Barr, and Teva to transfer this action from the District of Minnesota to this Court—a motion to which Ranbaxy was not a party. (ECF No. 1-41.) In that motion, Cephalon admitted only that it (not Ranbaxy) negotiated the bilateral settlement agreement from Pennsylvania. While Ranbaxy may have directed some communication regarding the contract into Pennsylvania, the record currently before me fails to specify what actions were actually taken by Ranbaxy.

6

As UHS has failed to identify any specific contacts by Ranbaxy with Pennsylvania that would allow the constitutional exercise of personal jurisdiction, I cannot find that Sun, as successor-in-interest to Ranbaxy, is subject to personal jurisdiction.

**B.     Whether Personal Jurisdiction is Proper Because the Conduct of Other Defendant Co-Conspirators Occurred in Pennsylvania**

UHS second theory premises personal jurisdiction over Ranbaxy on the acts of its alleged co-conspirators.

"Under certain circumstances district courts in this Circuit have adopted Pennsylvania's 'co-conspirator jurisdiction' under which 'the court imputes the contacts of the "resident" co-conspirator over whom it has jurisdiction to the "foreign" co-conspirator to see if there are sufficient contacts to exercise jurisdiction over the latter.'" Doe v. Hesketh, 15 F. Supp. 3d 586, 595 (E.D. Pa. 2014) (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 846 F. Supp. 374, 379 (E.D. Pa. 1994); see also Plumbers' Local Union No. 690 Health Plan v. Apotex Corp., No. 16-665, 2017 WL 3129147, at *8 (E.D. Pa. July 24, 2017); Nutrimost, LLC v. Werfel, No. 15-531, 2016 WL 5107730, at *7 (W.D. Pa. Mar. 2, 2016). To establish jurisdiction under the co-conspirator theory, "the plaintiff must allege that substantial acts in furtherance of the conspiracy occurred within the forum state and that the foreign defendant was, or should have been, aware of them." Doe, 15 F. Supp. 3d at 595; see also Aardvark Event Logistics, Inc. v. Bobcar Media LLC, No. 16-5873, 2017 WL 59059, at *7 (E.D. Pa. Jan. 5, 2017) ("[P]ersonal jurisdiction over a non-Pennsylvania defendant may be asserted if 'substantial acts in furtherance of the conspiracy occurred in Pennsylvania and [ ] the non-forum co-conspirator was aware of or should have been aware of those acts.'") (further quotations omitted). "It is not enough that the non-forum co-conspirator is part of the conspiracy as plaintiff must plead the defendant's

involvement with specificity." Sugartown Worldwide LLC v. Shanks, No. 14-5063, 2015 WL 1312572, at *4 (E.D. Pa. Mar. 24, 2015).

For several reasons, I conclude that the record before me establishes each of these elements and thus allows the exercise of personal jurisdiction over Ranbaxy and, in turn, Sun.

First, the Amended Complaint plausibly alleges a conspiracy. It avers that, beginning in February 2006, "Cephalon, Teva, Ranbaxy, Mylan, and Barr entered into a continuing illegal contract, combination and conspiracy in restraint of trade, the purpose and effect of which was to: (a) allocate sales of Provigil in the United States to Cephalon; (b) prevent the sale of a generic version of Provigil in the United States, thereby protecting Provigil from any generic competition for more than six years; and (c) fix the price for Provigil at a supracompetitive price." (Am. Compl. ¶ 164.)

Second the Amended Complaint pleads Ranbaxy's involvement in the conspiracy with particularity, alleging that Ranbaxy entered into one of these bilateral contracts with Cephalon on December 22, 2005. (Id. ¶¶ 94–95, 181.)

Third, as expressly noted by Cephalon in its Motion to Transfer Venue, substantial acts in furtherance of the conspiracy occurred in Pennsylvania. (ECF No. 1-41, at p. 23.) "[N]egotiation of the bilateral Settlements at issue in the Amended Complaint took place primarily by telephonic and e-mail communication between Cephalon—in Pennsylvania—and the four Generic Defendants—two in Pennsylvania, one in New Jersey, and one in New York. (Id. at p. 24.) "Negotiation of contemporaneous business transactions also took place by telephonic and e-mail communications among these same parties."[3] (Id.)

---

[3] "[C]ontract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum." Grand Entm't Grp. Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993). Telephone calls and emails directed into the forum to facilitate the execution of a contract that creates rights and obligations for a forum citizen

8

Finally, the Amended Complaint asserts that Ranbaxy was or should have been aware of those acts by alleging that "[e]ach Generic Defendant became aware of the existence, purpose, and scope of the deals Cephalon was striking with its fellow Generic Defendants, and each Generic Defendant's agreement was not an isolated deal but part of a larger arrangement among all Defendants to restrain trade." (Id. ¶ 107.) The Amended Complaint further states that "[a]greement by all parties was a necessary condition for the success of the arrangement among the Defendants. Absent an understanding that all the Generic Defendants would agree to stay off the market, a lone settling Generic Defendant would run the risk that one or more of its fellow generic competitors would continue to litigate and either prevail and/or enter 'at risk' after the 30-month stay (or any exclusivity) had expired." (Id. ¶ 108.)

Based on all of the above allegations, I can impute the contacts of "resident" co-conspirator Cephalon—over whom the Court has jurisdiction—to the "foreign" co-conspirator Ranbaxy in order to establish sufficient contacts to exercise jurisdiction over the latter.

Sun does not attempt to challenge the truth of these allegations, offer affidavits rebutting Ranbaxy's knowledge of the conspiracy's contact with Pennsylvania, or suggest that the conspiracy did not have a substantial connection with Pennsylvania. Rather, Sun challenges jurisdiction on two alternative grounds.

Sun first disputes the continued viability of the co-conspirator jurisdiction theory. Specifically, it contends that, in <u>Walden v. Fiore</u>, 134 S. Ct. 1115 (2014), the United States Supreme Court found that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction" and that a defendant's own contacts related to the

---

provide the minimum contacts sufficient to empower the court to exercise personal jurisdiction over the non-forum defendant. Id.; see also <u>Leone v. Cataldo</u>, 574 F. Supp. 2d 471, 479 (E.D. Pa. 2008) (holding that single visit to forum state plus repeated phone calls to forum state to negotiate contract with forum defendant—a contract on which the suit was based—was sufficient to establish minimum contacts).

lawsuit "must create a substantial connection with the forum state" to comport with due process. Id. at 1121, 1123 (quotations omitted).

Sun's argument is misplaced. Walden did not touch on the co-conspirator jurisdiction theory, but rather considered whether a police officer, who seized cash from airline passengers in Georgia during their return trip to Nevada, was subject to personal jurisdiction in a lawsuit in Nevada by those airline passengers. Id. at 1119. The court found that the police officer lacked minimal contacts with Nevada even if he knew that his tortious conduct in Georgia would delay return of funds to passengers with connections in Nevada. Id. at 1125. In so holding, the Court reasoned that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id. at 1122. As such, Walden did not undermine the basis for co-conspirator jurisdiction, which turns not on a plaintiff's connection to the forum, but rather on the defendant's purposeful contacts with a conspiracy directed at or carried out in the forum state. As set forth above, numerous cases in this District—decided after Walden—have emphasized the continuing viability of the co-conspirator jurisdiction theory.[4] (See supra pp. 7–8.)

Alternatively, Sun argues that, even if the co-conspirator theory is viable, personal jurisdiction must fail because Ranbaxy's contacts with Pennsylvania fall short of due process requirements and the exercise of personal jurisdiction over it does not "comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476. Sun further posits that it could not

---

[4] Sun's citation to cases from New York, Michigan, and Texas which have rejected conspiracy jurisdiction have no bearing here. Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits. Fed. R. Civ. P. 4(k)(1)(A). Accordingly, the applicable law is that of Pennsylvania.

reasonably have expected to be haled into court in Pennsylvania based on the alleged contacts UHS had with Pennsylvania.

Again, Sun's argument has no merit. The United States Supreme Court has identified five factors that courts should consider when balancing jurisdictional reasonableness, including: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest for the several states in furthering fundamental substantive social policies. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 324 (3d Cir. 2007) (citing Burger King, 471 U.S. at 477; Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987)).

Considering these factors, I conclude that exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. Ranbaxy was sued in 2006 by putative classes of direct purchasers and indirect purchasers in connection with the same Actavis reverse payment agreements that are the subject of this case. See King Drug Co. of Florence, Inc. v. Cephalon, Inc. et al., Civil Action No. 06-1797 (E.D. Pa.); Vista HealthPlan, Inc. v. Cephalon, Inc., Civil Action No. 06-1833 (E.D. Pa.). Without any challenge to this Court's exercise of personal jurisdiction, Ranbaxy has been defending claims identical to those raised here. This particular case was initiated when UHS opted to pursue its individual claims against the various Defendants, including Sun as Ranbaxy's successor-in-interest. Given that Ranbaxy has already submitted to this Court's jurisdiction for more than a decade in two almost-identical actions, Ranbaxy cannot now be heard to argue that it could not have reasonably been expected to be haled into court or that the exercise of personal jurisdiction over it would violate notions of fair play and substantial justice. In light of the lengthy history of these matters, the exercise of

personal jurisdiction over Ranbaxy will advance the forum state's interest in adjudicating the dispute, Plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system interest in obtaining the most efficient resolution of controversies, and the shared interests among the states for furthering substantive social policies.

IV. **CONCLUSION**

This Court may exercise personal jurisdiction over Sun as the successor-in-interest to Ranbaxy. Accordingly, I will deny the Motion to Dismiss.